# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JAN POLLAN and LILLIAN CACHUCHA,**
                Plaintiffs,

**v.**                                                     CIV No. 99-804 LH/WWD

**AMADEO HERRERA** in his individual
capacity, and **BERT DeLARA, RAY RIVERA,**
and **JOHN DICKERSON**, in their individual
and official capacities,
                Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions: Defendant DeLara's and Defendant Rivera's Motion for Summary Judgment Against Plaintiff Cachucha (Docket No. 61); Defendant DeLara's and Defendant Rivera's Motion for Summary Judgment Against Plaintiff Pollan (Docket No. 59); Defendant Dickerson's Motion for Summary Judgment Against Plaintiff Cachucha (Docket No. 96); and Defendant Dickerson's Motion for Summary Judgment Against Plaintiff Pollan (Docket No. 98). The Court, having considered the briefs of the parties and applicable case law, as well as the oral arguments of counsel at a January 9, 2001 hearing, in part for the reasons stated on the record, concludes that these motions shall be **granted in part and denied in part**, as specified below.[1]

---

[1] The Court partially took under advisement these motions, to the extent that they raise issues of liability under the New Mexico Tort Claims Act. The tort claims will be addressed later, in greater detail, in this Memorandum Opinion and Order. At the January 9, 2001 hearing, the Court also took under advisement Defendant Herrera's Motion to Sever (Docket No. 73), and indicated that it will issue a ruling on this issue at the Pre-Trial Conference, currently set for March 13, 2001.

## I.  PLAINTIFFS' § 1983 CLAIMS

**A.  Plaintiffs Cachucha and Pollan's § 1983 claims against Defendant DeLara.**  All of Plaintiffs' § 1983 claims against Defendant DeLara are dismissed.

**B.  Plaintiff Cachucha's § 1983 claims against Defendants Rivera and Dickerson.** All of Plaintiff Cachucha's § 1983 claims against both of these defendants are dismissed.   **C. Plaintiff Pollan's § 1983 claims against Defendant Rivera.**  All of Plaintiff Pollan's § 1983 claims against Defendant Rivera are dismissed, *except* her claims of wrongful supervision and retention.   These remaining claims shall be limited to the time period following the date in May 1998 that  Defendant Rivera learned of Plaintiff Cachucha's complaint against Defendant Herrera. Accordingly, any claims for occurrences that happened  *before* Defendant Rivera learned of Plaintiff Cachucha's formal complaint are hereby dismissed.

**D.  Statute of limitations issue for § 1983 claims against Defendant Dickerson.**

The statute of limitations for § 1983 claims in New Mexico is three years. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985).  Defendant Dickerson was sued by Plaintiffs on August 30, 2000.  All of Plaintiff Cachucha's  § 1983  claims against Defendant Dickerson have been dismissed on other grounds, and will not be addressed on statute of limitations grounds.  As noted below, I indicated at the January 9, 2001 hearing that Plaintiff Pollan's claims against Defendant Dickerson for wrongful supervision would not be dismissed.  These alleged claims occurred in 1998 and so are not barred by the applicable three year statute of limitations.         **E. Plaintiff Pollan's  § 1983 claims against Defendant Dickerson.**  All of Plaintiff Pollan's § 1983 claims against Defendant Dickerson are dismissed, *except* her claim of wrongful supervision. This remaining claim shall be limited to the time period following the date in May

1998 that Defendant Dickerson learned of Plaintiff Cachucha's complaint filed against Defendant Herrera.

  **F. Qualified Immunity**.  Defendants Rivera and Dickerson are denied qualified immunity as to Plaintiff Pollan's § 1983 claims that remain in this case.  I have concluded that Ms. Pollan has met her burden of establishing a constitutional violation.  There is no dispute that Plaintiff Pollan had a clearly established constitutional right not to be sexually assaulted by an on-duty law enforcement officer and that reasonable officers would have understood that their conduct violated that right.  *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1204 (10th Cir. 1998).  In response to this twofold showing by Plaintiff Pollan, Defendants have not met their burden of showing that there are no genuine issues of material fact as to whether their actions were "objectively reasonable in light of the law and the information [they] possessed at the time." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993)(*citation omitted*).

## II.  PLAINTIFFS' CLAIMS UNDER THE NEW MEXICO TORT CLAIMS ACT ("TCA")

  In Count V of the Second Amended Complaint, Plaintiffs make allegations of assault, battery, false arrest and false imprisonment against Defendant Herrera.  Defendant Herrera has filed no motion seeking any relief from the allegations of Count V; therefore these claims against him shall remain in the lawsuit.

  In Count VI, Plaintiffs allege negligent hiring, retention, training, and supervision against Defendants DeLara, Rivera and Dickerson.

### A. Plaintiffs' Tort Claims Against Defendant DeLara

As noted at the January 9, 2001 hearing, Defendant DeLara was Sheriff of Sandoval County until the end of 1994. The first alleged assault of Plaintiff Cachucha was in July of 1996. Plaintiff Cachucha has not demonstrated a breach of the duty of care by Defendant DeLara, or that she can prove a proximate causal connection between his conduct as sheriff and her alleged injury. There is no disputed issue of material fact involving the potential negligence of Defendant DeLara under the TCA. Plaintiff Cachucha's claims of negligence shall be dismissed as to Defendant DeLara. This same reasoning applies to Plaintiff Pollan's alleged assaults, the first of which occurred even later, in the spring of 1998. Accordingly, all state tort claims of both Plaintiffs against Defendant DeLara are dismissed.

### B. Statute of Limitations Issue as to Defendant Rivera

The TCA provides that actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. N.M.STAT. ANN. § 41-4-15(A)(Michie 1996). Plaintiffs commenced this litigation by filing a complaint on July 20, 1999. Accordingly, any occurrence that happened before July 20, 1997 is barred by this statute of limitations.

All of the alleged assaults against Plaintiff Pollan occurred in 1998; consequently, none of her claims is barred by the applicable statute of limitations. The statute of limitations must be examined with reference to Plaintiff Cachucha's claims however. It is undisputed that the first assault of Plaintiff Cachucha allegedly occurred in July 1996. This first claim is clearly barred by the statute of limitations.

The date of the next alleged assault of Plaintiff Cachucha is disputed. She alleges that the second occurrence happened when Defendant Herrera arrested her on a bench warrant, brought her to the Cuba Police Department, and fondled her breasts while she was handcuffed. According to the excerpts of Ms. Cachucha's deposition cited by Defendants at ¶ 8 of their Statement of Undisputed Facts, the second assault occurred sometime in the spring of 1997. In her response brief, Plaintiff Cachucha disputes the accuracy of her prior testimony, referring the Court to a warrant for her arrest that indicates that she was arrested in December of 1997. This is supported by the taped interview of Defendant Herrera. Given this dispute of a material fact, the Court is unable to rule as to whether or not this claim is barred by the applicable statute of limitations. If the evidence establishes at trial that the second alleged incident occurred prior to July 20, 1997, the Court will dismiss this claim at that time.

The third assault was allegedly made in August of 1997. Clearly this occurrence is within the two year statute of limitations and is not barred.

In summary, Plaintiff Cachucha's April 1996 claim is barred; the incident in the spring or in December of 1997 will be ruled upon the Court at trial; and the August 1997 claim shall remain in the case.

### C. Statute of Limitations Issue as to Defendant Dickerson

Defendant Dickerson argues that because Plaintiffs' complaint against him was not filed until August 30, 2000, any occurrence that happened before August 30, 1998 must be barred by the two year statute of limitations. All of Plaintiffs' claims allegedly occurred prior to August 30, 1998. If accepted, this argument would bar all claims of both Plaintiffs as to this defendant.

5

Because the statute of limitations does not in itself permit relation back[2], Plaintiffs must necessarily rely on Rule 15(c)(3) for their position that the amended complaint should relate back to the date of the filing of the original complaint, July 20, 1999. This approach would allow those claims that arose after July 20, 1997 to proceed.

For an amendment substituting a new party to relate back to the date of the original complaint, all the conditions set forth in Rule 15(c)(3) must be met. The rule establishes four criteria: (1) the claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining a defense; (3) the party to be brought in must or should have known that but for a mistake of identity the actions would have been brought against it; and (4) the second and third requirements must have been fulfilled within the period for service of process proscribed by Rule 4(m). *Bloesser v. Office Depot, Inc.*, 158 F.R.D. 168, 170 (D.Kan.1994).

I conclude that the first requirement has been met, however I am convinced that Plaintiffs have not met their burden to show that Defendant Dickerson received sufficient and timely notice and knowledge of the litigation so as to not be prejudiced by the amendment. Within 120 days of the filing of the initial complaint, or by approximately November 17, 1999, Plaintiffs must show that Defendant Dickerson received notice of the institution of the action, such that he was not prejudiced in maintaining a defense on the merits. Without legal authority, Plaintiffs argue that Defendant Dickerson received constructive notice of the litigation when his fellow officers were

---

[2] *See* FED.R.CIV.P. 15(c)(1). This provision acknowledges that the applicable statute of limitations itself may permit relations back. This occurs if the amended complaint was filed within the time allowed by the statute of limitations, in this case, two years after the date of the alleged occurrences. In this instance, the amended complaint was not filed within two years of the alleged occurrences of either Plaintiff. The amended complaint was not filed until August 30, 2000.

originally served with the original summons and complaint, and that such constructive notice is legally sufficient.

Although the notice may be formal or informal, it must be actual notice. *See Espinueva v. Garrett*, 895 F.2d 1164, 1167 (7th Cir. 1990), *cert. denied*, 497 U.S. 1005 (1990)(relation back possible only if actual knowledge of litigation). Constructive notice is not sufficient. *See Hensley v. Soo-Line Railroad Co.*, 777 F. Supp. 1421, 1424-25 (N.D. Ill 1991); *see also Hughes v. United States,* 701 F.2d 56, 58 (7th Cir. 1982); 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.19[3][c].

Plaintiffs have not established that Dickerson received formal or informal notice of their claims on or before November of 1999. The fact that he received notice of the litigation when he was subpoenaed for his deposition does not suffice as notice within the 120 days required by the rules, nor does it matter that it was within the two years statute of limitations period, given the absence of a complaint filed against him during this two year period.

As to the third requirement, I conclude that the addition of Defendant Dickerson as a party to the litigation is not action taken due to a misnomer or mistake, as contemplated by this third requirement. It is not as if Plaintiffs erroneously sued someone else that they believed to be Herrera's supervisor. Plaintiffs claim that they did not sue this defendant earlier because he was not identified in Defendants' initial disclosures as a supervisor. They claim that he was mis-identified as a former SCSD "deputy". It does not appear that Plaintiffs asked for the identity of Defendant Herrera's supervisor and were given the wrong name. I cannot conclude that Defendant Dickerson must or should have known that but for a mistake of identity the action would have been initially brought against him.

For these reasons, I conclude that Plaintiffs have not met their burden and that their allegations against Defendant Dickerson do not relate back to the date of the original complaint. Accordingly, all of Plaintiffs' claims under the TCA are hereby **dismissed** as to Defendant Dickerson.

### D.  Plaintiffs' Remaining Tort Claims Against Defendant Rivera

In light of the above-stated rulings, state tort claims remain only as to Defendant Rivera. Specifically, all of Plaintiff Pollans' claims for negligent hiring, retention, training and supervision remain intact.  Depending upon the time-frame of the second alleged assault, as determined at trial, Plaintiff Cachucha has all four categories of tort claims remaining against Defendant Rivera, arising from either one or two incidents.

In the present case, Plaintiffs allege that they suffered the "invasion of bodily integrity, physical injury, physical pain and suffering, and several psychological and emotional distress." (Sec. Am. Compl. at ¶ 41).  They allege that Defendant Rivera negligently supervised and retained Defendant Herrera, despite his knowledge that Defendant Herrera continued to sexually assault and batter female citizens.  They allege that Defendant Rivera's conduct "was in complete derogation of any known standard of care for the hiring, retention, training, and supervision of law enforcement officers."  (*Id*. at ¶ 39) and that his conduct constituted negligence in his failure to protect Plaintiffs from grave foreseeable harm by a law enforcement officer under his supervision".  (*Id*. at ¶ 40).

Defendant Rivera argues that there has been no waiver of immunity for the claims against him.  The provision of immunity generally provided however by N.M.STAT. ANN. § 41-4-4(A) (Michie 1996) does not apply to liability for damages caused by the negligence of public

8

employees and resulting in bodily injury, wrongful death or property damages.  *See id.* § 41-4-12.

Plaintiffs' allegations are that, in the scope of his duties, Defendant Rivera negligently retained and supervised Defendant Herrera, resulting in physical injury to them.  In order to state a tort claim under the waiver of immunity set out in § 41-4-12, Plaintiffs must demonstrate (1) that the defendant was a law enforcement officer acting within the scope of his duties, and, (2) that their injuries arose, in this instance, out of a tort enumerated in this section.

Addressing the second requirement first, I note that Plaintiffs allege that their injuries arose out of a tort enumerated in § 41-4-12, *i.e.*, assault and battery.

Next, I note that there is no issue that Defendant Rivera was acting within the scope of his duties, insofar as the supervision and retention of Defendant Herrera is concerned.  Although Plaintiffs' allegations are not that Defendant Rivera himself inflicted these personal injuries, it is their position that these injuries were caused by his negligent supervision and retention.  I note that § 41-4-12 does not require "direct causation" by Rivera in order for there to be liability.  The term "caused by" does not mean "committed by", but instead has the usual meaning of "proximate cause" as a requirement for liability in an ordinary negligence case.  *Methola v. Eddy County*, 95 N.M. 329, 332 (1980).  It is worth repeating that law enforcement officers need not be the direct cause of injury (in the sense of having inflicted it) in order for liability to attach.  *Schear v. Board of County Com'rs of Bernalillo County,* 101 N.M. 671, 673 (1984)(case involving wrongful acts by a third party).

Furthermore, the New Mexico Court of Appeals has specifically held that the TCA does not provide immunity to supervisory law enforcement officers whose alleged negligent supervision and training of their subordinates, also law enforcement officers, causes the

9

commission by those subordinates of enumerated torts that results in personal injury to plaintiff. *Ortiz v. New Mexico State Police*, 112 N.M. 249 (Ct. App.1991). The absence of the words "negligent supervision" or "negligent retention" from § 41-4-12 does not bar a claim. The specific form or classification of negligence is not material under § 41-4-12. *Ortiz v. New Mexico State* Police at 251. *See also Davis v. Board of County Com'rs of Dona Ana County*, 127 N.M. 785 (Ct. App. 1999). Because the TCA, as currently interpreted, makes supervisors liable for the batteries of their subordinates when supervisors negligently fail to supervise their subordinates, Defendant Rivera cannot claim that he is immune from suit. *See Quezada v. County of Bernalillo*, 944 F.2d 710, 719 (10th Cir. 1991).

Defendant Rivera argues that he cannot be held vicariously liable in tort because Defendant Herrera's conduct was contrary to County policies and procedures and was outside the scope of Herrera's employment with the County.[3] This brings us to the issue of whether or not a fact finder could conclude that Defendant Herrera acted within the scope of his duties, as that term has been defined in the context of the TCA.

As defined by the TCA, scope of duty "means performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M.STAT. ANN. § 41-4-3(G) (Michie 1996). The recent

---

[3] The Court has reviewed Plaintiffs' motion that seeks leave to supplement their response to Defendants DeLara's and Rivera's motions for summary judgment (Doc. No. 109). This motion was filed on December 28, 2000, and was not acted upon by the Court prior to the January 9, 2001 hearing. This motion directs the Court to the *McBrayer* case. Plaintiffs' motion seeks supplementation to address what they term a "recent clarification of New Mexico law." *Id. at 4*. It does not appear that Plaintiffs seek to supplement their factual record before the Court in light of the *McBrayer* decision, but rather to "alert the Court to the *McBrayer* decision, and its effect on the pending summary judgment motions." *Id*. at 5. The Court believes that these purposes have been met by Plaintiffs' December 28 motion, and that any further supplementation is unnecessary. The Court has also thoroughly reviewed Defendants' response to this motion, filed on January 5, 2001.

case of *Risk Management Div. Dept. of Finance & Administration, State v. McBrayer*, 2000 WL 1822081 (N.M. Ct. App. 2000), *cert. denied,* examined a similar situation, wherein a state university professor committed criminal acts of kidnapping, criminal sexual penetration, attempted murder, and criminal sexual contact against a student.  In that case, the Court of Appeals examined the indemnification sections of the TCA in conjunction with the definition of "scope of duty".  That Court concluded that

> the legislature likely foresaw the possibility that a public employee could abuse the duties actually requested, required or authorized by his state employer and thereby commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of those duties.  And it is equally likely that the legislature intended that those unauthorized acts would fall within the scope of duties as defined in the TCA.

*Id*. at *5.

Defendants focus on the aberrant behavior of Defendant Herrera and overlook how these alleged sexual assaults were facilitated by his position as a law enforcement officer.  Because it appears that Defendant Herrera used his authorized duty as a subterfuge to commit his assaults, I conclude that a reasonable fact finder could determine that his actions were within the scope of the duties that SCSD requested, required or authorized him to perform.  "It is the duty, not the tortious or criminal act, that triggers the states obligations under Sections 41-4-4(B) and 41-4-4(D)."  *Id*. at *6.

Defendants' arguments on this subject are as unavailing as the defense arguments made in the *McBrayer* case.  They too overlook the legislative scheme in place.  Their arguments that Defendant Herrera knew his actions were not part of his duties as a law enforcement, that his conduct violated various SCSD procedures, and that he made efforts to conceal his purported

11

activities from detection are not cognizant of the Court's reasoning in *McBrayer*. Clearly these same arguments could have been made about Defendant Araiza in the *McBrayer* case. The *McBreyer* Court was clear in its analysis that the legislature intended that even unauthorized and criminal acts could fall within the scope of duties as defined in the TCA. That opinion specified that §§ 41-4-4(E) and 41-4-17(A) contemplated the possibility of a public employee abusing the duties actually requested, required or authorized, and thereby committing malicious, even criminal acts that were unauthorized, *yet incidental* to the performance of those duties.

Clearly it is disputed as to whether or not Defendant Herrera's alleged conduct was outside the scope of his duties. On page 3 of Defendants' supplemental brief, Defendants acknowledge that the *McBrayer* Court stated that "it was for the fact finder to decide whether the criminal acts allegedly committed by the public employee were within the scope of that employee's duty." Contrary to Defendants' further contentions however, there is little or nothing in the record on this issue. Here, the issue of scope of duty centers on what SCSD requested, required or authorized as it related either generally or specifically to Defendant Herrerra's duty in the various functions in which he was occupied, prior to allegedly sexually assaulting Plaintiffs. I am unable to determine, as a matter of law,  whether or not Defendant Herrera's allegedly criminal acts were within the scope of duties that he was "requested, required or authorized to perform by [SCSD], regardless of the time and place of performance." *Id*. § 41-4-3(G).

Consistent with the reasoning in *McBrayer* and in light of the factual record before me,  I conclude that there is a question of fact on the issue of whether or not Defendant Herrera's criminal acts were within the scope of duties that he was "requested, required or authorized to perform by [SCSD], regardless of the time and place of performance." Section 41-4-3(G).

**WHEREFORE**, for the reasons stated at the January 9, 2001 hearing as well as herein, Defendants' motions are granted and all of Plaintiffs' claims are dismissed with the exception of the following claims which shall remain in the case:

1. Plaintiff Pollan's § 1983 claims against Defendant Rivera for wrongful supervision and retention;

2. Plaintiff Pollan's § 1983 claims against Defendant Dickerson for wrongful supervision;

3. Plaintiff Pollan's state tort claims against Defendant Rivera;

4. Plaintiff Cachucha's state tort claims against Defendant Rivera, for the two 1997 incidents;

As a point of clarification, the Court notes that Defendant Herrera filed no summary judgment motions, and that all claims raised in the complaint remain intact against him. Furthermore, the § 1983 and negligence claims against Defendant DeLara shall be dismissed. Defendant DeLara is dismissed as a defendant in this matter.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**